All right, Mr. Randall, before you begin, maybe we can short-circuit some of this, if you will volunteer to incorporate your argument from 163350, except for or in addition to whatever you're going to say now. I would very much like to adopt the arguments earlier this morning and appreciate the opportunity. Except for or in addition to whatever. Exactly. Great. So the 3551 case involves an employer, Advanced Urethane, an employee, Ms. Yamas, who was injured at work in May of 2009. She was treated between May of 2009 and January of 2011. In 2012, in December 2012, so that would be almost two years after treatment ended, the settlement agreement was entered into with the same proviso that Liberty Mutual would pay all necessary and related medical expenses. Pursuant to the fee schedule, so long as all the required data elements necessary to adjudicate the bill under Section 8.2 of the Act. So the question there was we had two providers. We had $5,000 worth of unpaid bills by one provider, $4,000 in unpaid interest that continues to accrue in those bills, $20,000 in unpaid interest on late paid bills for a total of about, and of course when I filed the complaint it was 17 months ago, so this case is worth about $40,000 or $50,000, the vast majority of which is interest. So this case, in this case, Judge Snyder decided that Section 155 was not available, and he decided that there was no claim for contract either implied under the insurance policy or contract implied in law or contract implied in fact. There's an interesting discrepancy in his finding that there's no Section 155 claim and there's no claim of an implied right of action under the insurance policy because he finds that Section 8.2D gives a private right of action to the medical provider against both the employer and the insurer. So what I would say to you is that that finding, which I would ask you to sustain, and you would sustain it in connection with permitting, in the 5L case, permitting us to proceed against Liberty Mutual on a statutory claim. Before you get too far down that path, you're saying the 8.2D claim was sustained by Judge Snyder, there is not a cross-appeal in this case by Liberty saying that finding was wrong. Correct. And so you want us to take Judge Snyder's finding, which really isn't before us because nobody's contesting it, and say to Judge Sherlock, let him plead a claim under 8.2D. I misspoke a tiny bit, but the point, the overarching point is right. What I'd like you to do is to find for reasons I'm about to explain that Zurich is wrong, that as a result of Zurich being wrong, you should tell Judge Sherlock to reinstate Section 8.2 private right of action claim against both defendants, and that as a ---- That doesn't have anything to do with 5.1. 8.2D is not before us. Fair enough. Fair enough. The other side of the coin I've been talking about, the third-party intended beneficiary under the insurance policy is before you in 5.1. And that's why I call it two sides of the same coin. The insurance policy, which is, in fact, attached in the record in this case, has the provisions that Liberty Mutual would be primarily liable, that the employer should not make or makes patents which are voluntary and at their own risk, and promises to pay all of the liabilities which may arise under the Workers' Compensation Act. All right. So in 5.1, we said, we alleged that the insurance policy made the medical providers intended beneficiaries of the insurance contract because the insurance contract engrafts all of the terms of the workers' compensation policy, and specifically when the insurance policy says we will pay all of the obligations arising under the workers' compensation law, one of those obligations arising out of the workers' compensation law is to pay directly to the doctors both their medical bills and the statutory interest. Right? Is that an intended class? Yes. It's an unnamed but specified class, which the Mars case talks about. There are a number of different ways to do it. Exactly. And so, you know, that takes us to why is Zerk wrong? Because Zerk found that you couldn't, that Zerk held that Mars held that even after the statute was amended, you cannot find that the medical providers are intended beneficiaries under the contract. And, of course, our position is that's not true in 2010. It may have been true in 2004 when Mars was decided. And so if you apply the Mars test and decide that the statute is engrafted, it's simple to say that the medical providers are a class of payees covered by the statute and therefore covered by the insurance policy. The other problems with Zerk that I think you have to address, number one, it ignores McMahon completely, as I discussed earlier. Number two, it also ignores years and years of Supreme Court precedent with respect to how to construe a statute, how to construe a statute when it's been amended a number of times, how to construe a statute to give effect to all of the provisions and not to construe a statute so that there are some aspects of it that are merely oratory or, again, chimerical, like providing for a right but no remedy. And I think Liberty Mutual has almost conceded that there may be a right, but there's certainly no remedy and certainly no effective remedy. And ignoring Supreme Court precedent, even in the workers' compensation context, and here I'm referring to the Sylvester case, when the legislature amends a statute, it must mean to do something different. We have nothing different under the way the insurance companies are conducting themselves and the way Liberty Mutual is conducting itself. So I think you have to address Zurich, and I think I distinguish Zurich for a number of different reasons, one of which is I have two written settlement agreements rather than the class action allegations. But Zurich relies on Fisher for the proposition that the medical providers are incidental and not central. And that's where I started, and I incorporated that argument an hour ago, but I'd like to just repeat it briefly. Central, not incidental. It's amazing that the Zurich court cited Fisher for the proposition that the medical providers were not a class intended to be protected by the statute. In Fisher, the Supreme Court said we are not going to recognize a private right of action for retaliatory discharge when an employee of a nursing home reports misconduct by the owner. We're not going to find that the Nursing Home Act supplies a private right of action called retaliatory discharge. And the opinion is very clear. Fisher says retaliatory discharge is something very near and dear to us. It's very special, and we do not want to expand the scope of retaliatory discharge. And Justice Harrison's dissent says, golly gosh, I'm sorry for being so colloquial. Justice Harrison's dissent says, I fear that this decision will be used to destroy private rights of action completely. It's ironic because Kelsey v. Motorola was decided 20 years before and found that one place for sure you can find a private right of action for retaliatory discharge is the Workers' Compensation Act. So Fisher's not an appropriate case to decide what's central and what's incidental. It's just not going to happen. What case would you say we should look at? There are a couple of cases that have been decided since, and I have them here in the book. There were three. I think you said three or three. Two or three. There's the condominium case, which applied to secondary buyers as well as original buyers. There is, I apologize, Justices, for not having complete mastery as I should. Can I be excused just to grab something? Yes. So I would direct you to, in the first instance, King v. Senior Services Associates, 341 Illiop Third at 264. So this is a 2003 case decided by the Second District four years after Fisher. And in that case, the Second District found that you could imply a private right of action under the Elder Abuse and Neglect Act when you are a whistleblower to a criminal act. And the Second District in King drew the distinction between the significance of the public policy as that which drives whether or not to recognize a private right of action. The public policy may not be strong for employees to report cautious conduct, but the public policy is strong, sufficient to find a private right of action when the whistleblowing is criminal activity. So what's the public policy here? The public policy here is medical providers are central, not incidental, to the workers' compensation system, as McMahon found. If you don't pay the doctors, you're not going to have doctors to treat injured workers. And if you don't have doctors who are willing to step up the plate and treat injured workers, you're not going to have an effective workers' compensation system. And McMahon was decided long before any of these other things. The other case that would call your attention is, and I made reference to it as the condominium case, it's D'Atomo v. Baumbeck. That, too, is a Second District case. The site is 2015 IL App 2nd 140865, and that's a case that construed the Condominium Act and had to determine whether or not the Act should provide a private right of action for someone that was not specified in the Act. In other words, a buyer after a sale, not a prospective purchaser in terms of the disclosure requirements. And the point there is that it's not just authorees who are intended to be protected by the Act, even though that's what the Act specifies and applies to. It is the class of both potential buyers and real buyers and secondary buyers who are entitled to adequate disclosure under the Condominium Act. So the question is the importance of the public policy and whether or not the provider, any plaintiff seeking to assert a claim for a private right of action, whether that person is incidental to the statutory scheme or essential to the statutory scheme. I do not believe that the Zurich Court gave appropriate consideration to how essential the medical providers are to the workers' compensation system. And my last point is I would like to articulate my peak with the Zurich Court's citation to the Oklahoma-Hawley case. I don't think it's a big deal. Well, one line in the whole. You know, I see it depends whose ox is being hoarded. But that one line, not everything in the Workers' Compensation Act is a right, and that's what the appellate court in Zurich found to be, to find that the medical providers were incidental and not essential. It's just wrong. That case involved a declaratory judgment action by a widow who wanted to make sure that the insurance company could not bring a subrogation claim against her under her husband's workers' compensation policy. And what the Oklahoma Supreme Court said was there are exclusions in the Oklahoma Workers' Compensation Act, and those exclusions might be considered rights of the worker or of the employer or of the insurer. But not everything that's in our Workers' Compensation Act should be considered a right. The insurance company does not have a right to subrogation. We're not going to recognize it as a right for the purposes of deciding whether or not a widow has to be bailed without insurance coverage. That's why I don't think it's such a big deal. They pulled out a line from a different act with different issues, you know, in Oklahoma, which has nothing to do with what's going on. We are, again, on two sides of the same coin, Justice Hyman. For the same reason you think it's irrelevant, I find it difficult to digest. Thank you all. Thank you. Counsel? I will start by asking you the same question. Do you wish to incorporate your arguments from this 163350 case, except for or in addition to anything that you're going to tell us now? Yes, I do, please, Your Honor. Thank you. A couple points that I wanted to make on this 3351 case. This case does not have the breach of statutory duty at all at issue in the appeal. The circuit court did not dismiss that case, and then plaintiffs took a voluntary non-suit, so that's not at issue. And, in fact, in the other case, the other party, it wasn't dismissed against them. So as far as counsel's arguments regarding the private right of action, I think on this one the part of the Zurich case that we're looking at, and then also Mardis v. Grinnell, is whether or not they would be third-party beneficiaries to the insurance policy, which is their count one in the complaint. And, you know, I've gone over the arguments in my brief, and I know you don't want to hear those again. I do want to make a comment that counsel does refer to the McMahon case and believes that the Zurich court didn't consider the McMahon case. The McMahon case is an administrative appeal of a workers' compensation commission decision. And in that one, when you read that case, they do discuss the penalties and the attorney's fees that are available under the act, and that's part of what I was talking about prior in the other case, in the 5-0 case, is that there are limitations or provisions in place for how to handle these situations if there are issues regarding payment. And as I said previously, too, obviously when an attorney can get an attorney's fees for something, they're going to be bringing it up because they want to try to get those attorney's fees if they've got a valid position for it. Counsel said that the only way he can get attorney's fees is by statute, not under 155. Right. And I guess my reason for bringing that up is not so that the medical providers can get attorney's fees, but my point being that it's an opportunity for the petitioner's bar to make additional monies if they raise these issues, so it's an incentive. So that I guess counsel has made it sound like they don't care. They settle the case, and all they want is their lump sum, and they're done. But you've got to remember, the attorneys who are working on these cases can get more money if they've got some valid arguments and they can go to the commission and get more money when there is an issue like that. So it's not for them to get attorney's fees, but I'm just pointing out that there is those provisions in place and that there are mechanisms in place for this comprehensive act. I think that the Mardis v. Grinnell case is important for this court to look at on the issue of the whether they're third-party beneficiaries to the contract. In that case, after analyzing other cases, the Mardis court found that the third-party beneficiaries and that medical providers are generally not third-party beneficiaries of insurance policies, particularly workers' compensation policies. The only exceptions to this rule are when, number one, the policy expressly identifies medical providers as third-party beneficiaries, or secondly, the policy provides for payment directly to the medical providers. And the policy language that was analyzed in Mardis is the same policy language that is found in this 3351 case. And so I don't think that counsel's provided any compelling reasons for this panel to decide to depart from that precedent, which the Mardis case was decided in 2009, so that's been quite a length of time. With regards to count two, which was the count for breach of contract implied in fact, In that case, ZURC did decide it. The ZURC case, the insurers were the only defenders and there wasn't the employer. And so in this case, before the court, the employer is also a defendant with regard to a breach of contract implied in fact. So what I would like to argue as far as with the employer on that one, in addition to the ZURC, what they held for the insurer, that for the employer, you can't have a contract implied in fact when there's a preexisting legal duty. And so I'd submit that the requirements of the Workers' Compensation Act are a preexisting legal duty that would also preclude the breach of contract implied in fact, which, of course, also are arguments on that one. Just as far as the employer, there weren't any specific allegations directed towards them for that cause of action. With regards to the Section 155 bad faith count against Liberty Mutual, I think that that's pretty well argued out in the briefs. I don't know that I have anything additional. I don't think that there's anything in the record showing that there's an assignment of rights. And I think that Gadsden and the cases make it very clear that you need to be insured under the policy. And that's just not the case here. And with that, does the Court have any questions on any of the issues here? And I just wanted to make one final point. Counsel did make reference that he believed that the defendants had conceded that they did have a right. And I just wanted, under the statute, I wanted to make it clear that I'm saying that there's The statute gives the ability to issue payment directly to the medical providers. I don't think that that creates a statutory right. So I do disagree that we need to make that point. Thank you. Counsel. So counsel's description of Martis is exactly right. Martis says that a medical provider can be an intended beneficiary of an insurance policy where the policy identifies the medical providers or the policy provides that it will make payments directly to the providers. And so it's the same form policy that they were using in 2000 and 2000, 2005, 2010. I think they're using the same form policy today. What's changed is the statute which is engrafted into the policy. The policy says we will pay all obligations required under the Workers' Compensation Law. So you can't, you have to read that policy to include Section 8.2D. After 2005, that was not before the Martis Court. It is now. And to my mind, it could not be clearer. And, Justice Hyman, you put a gun to my head and I said I'd rather have the private right of action. But here's the other side of the coin. I hope I didn't give up the case, the claim in the 351 case by telling you I'd rather pick the statutory. Because they are all interlinked. If you've got an insurance policy that says we will pay every obligation under law and the law changes and you don't change your policy, you bought in. I did not address contract-compliant in fact, or for that matter, contract-compliant in law. I'll do it very briefly. The reason we have a contract-compliant in fact claim is because, and this is really kind of an interesting point, counsel says there's a previously existing legal duty. And this is one of the things that we're fighting about. Is that previously existing legal duty to the medical providers? We think it is. They think, no, it's just a previously existing duty to pay the patient. Well, and that's why it's a contract, it's pleaded in the alternative as a contract-compliant in fact. What are the facts? The facts are the hard scrap of facts that every time a check is cut to a medical provider before an award, it is cut directly by the insurance company, the insurance company, not the employer, to the medical provider. And that's what creates a course of dealing that the medical providers rely on. Right? If I start treating a patient, I'm not a doctor. If my clients start treating a patient and the patient says, I'm filing a worker's count claim, here's my employer. And the insurance company says, here's your claim number, send us the rest of the bills. And then they start to pay some of the bills. What difference does it make if the statute requires the insurance company to do what it's doing? Okay? Yes. Whether they say, submit the bills to the employer, they'll send them to us, then we'll pay them, or submit them directly to us and we'll pay them. What's the detrimental reliance? It's the same result either way. You're exactly right. And this time you can put a gun to my head and I will tell you we're too rock solid, certainly. I would rather have a claim as an intended beneficiary of the insurance contract or a claim under the statute than I would to have to sort through the hardscrabble facts to add a claim that covers the same liabilities. Absolutely right. Any other questions? Thank you very, very much. Thank you, counsel. Thank you both for your excellent briefs and for your interesting and lively oral arguments on both cases. This case will be taken under advisement. The vote is adjourned.